# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**JASON HEMENWAY and
EVA HEMENWAY,**

        **Plaintiffs,**

v.                                                    **Case No.  8:12-cv-2114-T-JSM**

**JOHN BARTOLETTA,**

        **Defendant.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss (Dkt. 7)

and Plaintiffs' Opposition to Defendants' Motion to Dismiss (Dkt. 8).  The Court, having

considered the motion, response, and being otherwise advised of the premises, concludes that

the motion should be granted in part and denied in part.

## BACKGROUND

On March 22, 2011, the Hemenways filed a complaint in this Court, 8:11-CV-597-

JSM-AEP, setting forth the following five counts: (I) Sale of Securities in Violation of 15

U.S.C. § 78j and 17 C.F.R. § 240.10b-5; (II) Sale of Securities in Violation of Chapter

517.301, Florida Statutes; (III) Breach of Fiduciary Duty; (IV) Fraudulent Misrepresentation;

and (V) Negligence.  That complaint was filed against John Bartoletta, High Street Group,

LLC, High Street Capital Management, LLC, and High Street Financial, LLC, and Erick

Arnett was later added as a defendant.  On July 11, 2012, Bartoletta individually filed a

voluntary petition for relief under Title 11, Chapter 13 of the United States Code, case 12-10633-KRM, in the United States Bankruptcy Court for the Middle District of Florida.

On August 7, 2012, the Hemenways initiated this adversary proceeding against Bartoletta to determine the dischargeability of a debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(19) (Dkt. 1-2). The adversary complaint alleged non-dischargeable debts based on false pretenses, false representation, actual fraud, breach of a fiduciary duty, and violation of both federal and state securities laws (Dkt. 1-2). On September 18, 2012, the Hemenways' Motion to Withdraw Reference was granted (Dkt. 2). On September 20, 2012, Bartoletta filed the present Motion to Dismiss (Dkt. 7).

The following are drawn from the allegations of the Complaint (Dkt. #1-2), which the Court accepts as true for the purpose of this motion only.

The Hemenways won the Florida Lottery in October 2007, and, prior to that time, they had never owned a share of stock, a bond, or any other investment security. The Hemenways allege that they were at all times relevant completely unsophisticated and unknowledgeable as to securities and investment matters. Erick Arnett, a defendant in the pending District court case before this Court, was one of the Hemenways' primary advisors who assisted them in setting up an investment account at Capital City Bank Trust Company. Arnett was aware of the Hemenways' investment objectives, which included a low risk tolerance, and their investments at Capital City were conservative and low risk in accordance with their desires.

In 2009, Arnett talked with Bartoletta about leaving Capital City and going to work for High Street Group, LLC. High Street Group, LLC, is an affiliated company with High

Street Capital Management, LLC, and High Street Financial, LLC ("High Street entities").

All three High Street entities are managed, controlled, and primarily owned by Bartoletta.

Arnett then began to solicit the Hemenways to transfer their accounts to High Street Group.

Bartoletta was aware of the Hemenways' financial inexperience and encouraged Arnett's

solicitation of their investments.

With Arnett acting as an agent for Bartoletta and the High Street entities, he made the

following representations regarding their proposed investment:

    a.    that the investment was safe and low risk;
    b.    that they would be in the "hedge fund" with at least 8-10 other high net worth individuals;
    c.    that the investment was appropriate for their particular circumstances; and
    d.    that the investment was consistent with their investment objectives and risk tolerances.

Based on the advice and representations of Arnett, the Hemenways withdrew

$3,000,000 from Capital City and purchased two limited partner interests in New Advantages

Futures, L.P., paying $1,500,000 for each limited partnership interest.  The partnership

interests in New Advantage constitute securities under federal and Florida law.

At no time prior to the purchase of these limited partnership interests did Bartoletta

disclose the following:

    a.    that New Advantage would be trading in highly speculative and volatile investments;
    b.    that the New Advantage limited partnership interests were highly sophisticated investments that are not appropriate for inexperienced and untrained individuals;
    c.    that the New Advantage limited partnership interests carried a high degree of risk compared to other more traditional investments such as bonds and equities;

d.   that the New Advantage limited partnership interests were inappropriate for the Hemenways;

e.   that the New Advantage limited partnership interests were inconsistent with the Plaintiffs' investment objectives and risk tolerance;

f.   that New Advantage, and its predecessor fund, had consistently lost money since its inception in 2006;

g.   that the other hedge funds run by Bartoletta similarly had consistently lost money;

h.   that New Advantage would charge the limited partners, such as the Hemenways, exorbitant fees and expenses, including significant fees to New Castle Capital Markets, LLC, an entity managed, controlled, and primarily owned by Bartoletta;

i.   that based upon the extremely high fees relative to the amount of money in the New Advantage fund, the only way for the Hemenways to make money on their investment was for the fund to consistently have double digit rates of return; and

j.   that Bartoletta and the High Street entities lacked the skill, experience, and expertise to make money in futures and commodities trading.

After investing their $3,000,000, the Hemenways only received general monthly statements that were devoid of any details concerning the investment choices of New Advantage. Under the Limited Partnership Agreements, the General Partner for New Advantage was High Street Capital Management, LLC, which in turn hired High Street Financial, LLC, to manage the investment decisions. Bartoletta was registered as an Investment Adviser Representative for High Street Financial, LLC, and a Registered Investment Advisor with the Securities and Exchange Commission.

Immediately following their investment, the value of the limited partnership interests began to decrease in value. Bartoletta assured the Hemenways of the safeness of their investment and encouraged them not to liquidate their interests. Between April 1, 2010 to June 30, 2010, the Hemenways' lost approximately $589,072. During this time, New

Advantage engaged in excessive trading designed to generate commissions for New Castle Capital Markets, LLC, an entity managed, controlled, and primarily owned by Bartoletta. The Hemenways eventually withdrew from New Advantage on June 30, 2010.  In the fourteen months that they invested in New Advantage, they lost approximately $1,200,000 of their $3,000,000 initial investment.

## MOTION TO DISMISS STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Federal Rule of Bankruptcy Procedure 7012(b) incorporates Federal Rule of Civil Procedure 12(b)(6) into all adversary proceedings."  *In re Kunze*, 459 B.R. 468, 471 (Bankr. D. Kan. 2001). When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).   However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).  On the contrary, legal conclusions "must be supported by factual allegations."  *Id.*  Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading  as facts will not prevent dismissal."  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

I.     **Count I & II: False Pretenses or False Representations and Fraud under 11 U.S.C. § 523(a)(2)(A)**

11 U.S.C. § 523 governs the non-dischargeability of debts in bankruptcy cases. Under § 523(a)(2), a debt is non-dischargeable if "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -- (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." For purposes of § 523(a)(2)(A), to withstand a motion to dismiss, a creditor must sufficiently allege facts that "(1) the debtor made a false representation with intent to deceive the creditor, (2) the creditor relied on the representation, (3) that his reliance was reasonably founded, and (4) that the creditor sustained loss as a result of the representation." *In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993) (holding that these are the four elements a creditor must prove to establish fraud in determining dischargeability for purposes of § 523(a)(2)(A)).

Bartoletta argues that the Hemenways failed to plead the necessary requirements and that he does not owe a debt to the Hemenways for "money, property, services, or an extension, renewal, or refinancing of credit." However, he fails to identify how the Hemenways complaint is deficient and omits any legal authority for his position.

In their complaint, the Hemenways allege that Bartoletta, through his agent Erick Arnett and the High Street Entities, made false statements and omissions with the intent to induce them to purchase a limited partnership interest in New Advantages. These are not mere conclusory allegations, rather the Hemenways allege four specific false statements and

ten specific omissions.  They allege that they relied on these representations by investing $3,000,000, and that they sustained a loss of $1,200,000 in approximately fourteen months. Lastly, they allege this reliance was reasonable because of their inexperience with securities and investment matters and Bartoletta's knowledge of their lack of sophistication as well as his position as a registered investment advisor.  Accepting these factual allegations as true, the Hemenways have stated a cause of action for false pretenses or false representations and fraud.

## II.     Count III: Breach of Fiduciary Duty under 11 U.S.C. § 523(a)(4)

Under § 523(a)(4), a debt is non-dischargeable "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  For purposes of this section, the court must find "an express or technical trust" giving rise to the fiduciary duty.  *In re Shultz*, 208 B.R. 723, 728 (Bankr. M.D. Fla. 1997) (*quoting Davis v. Aetna Acceptance Co.*, 293 U.S 328, 333 (1934)).  "The express or technical trust aspect of Section 523(a)(4) requires that there be 'a segregated trust *res*, an identifiable beneficiary, and affirmative trust duties established by contract or by statute.'" *Id.* (*quoting Am. Sur. & Cas. Co. v. Hutchinson (In re Hutchinson)*, 193 B.R. 61, 65 (Bankr. M.D. Fla. 1996)).  A state statute or the organizational documents of a limited partnership may impose such fiduciary duties to satisfy this last requirement of an express trust.  *Id.*

However, statutorily-imposed fiduciary duties owed by a managing member of a limited liability company do not establish an express or technical trust as required by § 523(a)(4).  *See, e.g., In re Esfahani*, 2010 WL 3959607, at *3 (Bankr. M.D. Fla. Sept. 22,

2010); *In re Lawrence*, 2009 WL 3486063, at *4 (Bankr. M.D. Fla. Oct. 28, 2009); *In re Grosman*, 2007 WL 1526701, at *16 (Bankr. M.D. Fla. May 22, 2007). Florida Statute Section 608.4225(1)(a) states that the duty of loyalty requires a managing member to:

> hold[] as trustee for the limited liability company any property, profit, or benefit derived by such manager or managing member in the conduct or winding up of the limited liability company business or derived from a use by such manager or managing member of limited liability company property, including the appropriation of a limited liability company opportunity.

Because the statute does not impose the administration of an express trust or control of a segregated *res*, the statute does not create the necessary fiduciary capacity required by § 523(a)(4). *In re Esfahani*, 2010 WL at *3.

Florida Statute Section 620.1408(2)(a), imposing a fiduciary duty of loyalty on general partners of a limited partnership, mirrors the language of Florida Statute Section 608.4225(1)(a). Likewise, it fails to require the administration of an express trust or to mandate the control of a segregated *res*. Thus, the statutorily-imposed fiduciary duties owed by general partners to the limited partners in a limited partnership do not rise to the level of a fiduciary duty required for the nondischargeability of a debt under § 523(a)(4). *See also In re Ryan*, 90 B.R. 554, 556 (Bankr. S.D. Fla. 1988) (holding that the Florida Uniform Limited Partnership Act "makes a partner accountable to the partnership, [but] it does not create a technical or express trust and does not, therefore, make a partner a fiduciary for the purposes of § 523(a)(4)").

The Hemenways argue that these statutorily-imposed fiduciary duties of general partners in a limited partnership suffice to satisfy the requirements of § 523(a)(4). As

discussed above, they do not.   Additionally, the Hemenways did not allege that the organizational documents required the general partner to hold the limited partnership assets in an express trust.   Consequently, there are insufficient allegations in the adversary complaint to find the formation of an express trust as required by § 523(a)(4).  As such, the Court need not address whether the Hemenways adequately pled their fraud allegations, and Count III is dismissed for failure to state a cause of action upon which relief can be granted.

III.    **Count IV & V: Violation of Federal and State Securities Laws under 11 U.S.C.**

    **§ 523(a)(19)**

Section 523(a)(19) includes among debts that are not dischargeable a debt that:

(A) is for ---
    (i) the violation of any Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
    (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
(B) results, before, on, or after the date on which the petition was filed, from--
    (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
    (ii) any settlement agreement entered into by the debtor; or
    (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

Congress amended subsection (B) in 2005 to add the phrase, "before, on or after the date on which the petition was filed," between the words "results" and "from."  *In re Dupree*, 336 B.R. 520, 528 (Bankr. M.D. Fla. 2005).  This amendment allows pending securities fraud claims to be exempt from dischargeability, even though the claims have not yet been reduced

to a judgment, order or settlement agreement at the time of the debtor's bankruptcy filing. *Id.*

Bartoletta argues in his motion to dismiss Count IV and V of the complaint that because the debt was not resolved in a "judicial or administrative proceeding or from a binding settlement agreement" it must fail.  However, as discussed above, the debt's liability need not be fixed prior to the commencement of the bankruptcy case, as long as the underlying action was initiated before the debtor's bankruptcy action.  *See In re Zimmerman*, 341 B.R. 77, 80 (Bankr. N.D. Ga. 2006) ("Section 523(a)(19) expressly contemplates a postpetition determination of liability by a non-bankruptcy forum for debts resulting from securities law violations as well as common law fraud, deceit, or manipulation in connection with the purchase or sale of a security.").  As such, the Hemenways have adequately alleged violations of federal and state securities laws even though that liability is currently pending before this Court, and therefore dismissal of Count IV and V is not warranted.

It is therefore ORDERED AND ADJUDGED that:

1.      Defendant's Motion to Dismiss (Dkt. 7) is GRANTED in part and DENIED in part.

2.      Count III is dismissed without prejudice.  Plaintiffs may amend Count III within fourteen (14) days of this Order if they have facts supporting this claim as stated herein.

3.      Counts I, II, IV, and V are not dismissed.

4.      If Plaintiffs fail to amend Count III within fourteen (14) days, Defendant shall file an answer to Counts I, II, IV, and V within fourteen (14) days of the expiration of Plaintiffs' time to amend.

**DONE** and **ORDERED** in Tampa, Florida on October 2, 2012.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2012\12-cv-2114.mtdismiss.frm